The RITZ–CARLTON HOTEL COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The RITZ–CARLTON HOTEL COMPANY, Respondent.

Nos. 96–3391, 96–3454.

United States Court of Appeals, Third Circuit.

Argued June 10, 1997

Decided Aug. 27, 1997.

Arch Stokes, Carol Burkett–Hawkins (argued), Christopher Terrell, Stokes & Murphy, Atlanta, GA, for Petitioner The Ritz Carlton Hotel Co., No. 96–3391, and for Respondent The Ritz Carlton Hotel Co., No. 96–3454.

Aileen A. Armstrong, Deputy Associate General Counsel, Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, John D. Burgoyne (argued), Assistant General Counsel, William M. Bernstein, Washington, DC, for Respondent NLRB in No. 96–3391, and for Petitioner NLRB in No. 96–3454.

BEFORE: SLOVITER, Chief Judge, MANSMANN and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

The Ritz–Carlton Hotel Company (the "Hotel") operating in Philadelphia, Pennsylvania, petitions for review of an order by the National Labor Relations Board ("NLRB" or "Board") finding that the Hotel had committed an unfair labor practice in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. § 158(a)(1),(5), by refusing to bargain with the Board-certified International Brotherhood of Teamsters, AFL–CIO, Local 830 (the "Union"), and the Board cross-petitions for enforcement of its order. The Hotel contends that the bargaining unit certified for representation by the Union was inappropriate. The Board argues that we should not make a decision on the appropriateness of the bargaining unit because the Hotel failed to exhaust its administrative avenues before the Board, and therefore has waived its objections to the unit certification. We recognize that our precedent on this issue has not always pointed in a direct line.

## I.

On January 19, 1996, the Union filed a petition with the Board seeking representation of a bargaining unit composed of the Hotel's ten Engineering Department employees. At a hearing conducted on February 5, 1996 before a hearing officer, the Hotel argued that the Engineering Department employees did not perform tasks sufficiently distinct from the entire Hotel staff and that the only appropriate bargaining unit must also include 170 employees from the Hotel's Food and Beverage Department, 118 employees from the Rooms Division, and 34 employees who worked in the kitchen. It argued that four years earlier another union, the Hotel Employees and Restaurant Employees International Union Local 274, had sought to represent the entire Hotel staff and the Board had certified such an "all-employee" unit at the same hotel. In the ensuing election the union lost. The Hotel apparently viewed that earlier unit determination as precedential for future situations, and thereby refutative of the smaller unit sought here.

On February 21, 1996, the Board's Regional Director issued a Decision and Direction of Election ("DDE") which rejected the Hotel's position. The Regional Director concluded that the Engineering Department employees are separately supervised, perform maintenance and repair duties which can be highly technical and are distinct from other employees' work, are subject to different wage and work order systems and, as such, share a sufficient community of interest to be deemed an appropriate bargaining unit under Board standards. App. at 224–25. *See Hilton Hotel Corp.,* 287 NLRB 359 (1987); *Sheraton–Anaheim Hotel,* 252 NLRB 959, 1980 WL 12496 (1980). Accordingly, the Regional Director directed an election of "[a]ll full-time and regular part-time employees in the Engineering Department at the Employer's Philadelphia, Pennsylvania hotel, excluding all other employees, guards and supervisors as defined in the Act." App. at 225.

In the same DDE, the Regional Director informed the Hotel of its right to request review by the Board of his bargaining unit decision pursuant to § 102.67(b) of the Board's regulations, provided that such request was filed within two weeks from the date of decision, i.e., by March 6, 1996. App. at 226. The Hotel failed to request Board review of the Regional Director's decision by that date, or thereafter.

On March 14, 1996, the Union won a secret ballot election conducted by the Board by a vote of 5 to 3. The Hotel did not challenge the eligibility of any election participants nor did it file any objections to the conduct of the election, as it was entitled to do under § 102.69(a) of the Board's regulations. *See* 29 C.F.R. § 102.69(a) (1996). On March 25, 1996, the Board certified the Union as the exclusive collective bargaining representative of that unit's employees.

In April, the Hotel refused the Union's request to bargain. On May 10, 1996, in response to an unfair labor practice charge filed by the Union, the Regional Director issued a Complaint and Notice of Hearing alleging that the Hotel's refusal to bargain violated §§ 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5). In its answer, the Hotel argued that the bargaining unit as determined by the Regional Director was improperly certified by the Board and it was thereby excused from its bargaining obligation. The Hotel, however, did not respond to the Board's Notice to Show Cause why the Motion for Summary Judgment in favor of the Union, filed by the General Counsel, should not be granted.

On July 9, 1996, the Board issued its Decision and Order granting summary judgment to the Union and finding the Hotel's refusal to bargain to be a violation of §§ 8(a)(1) and (5) of the NLRA. The Board noted that the Hotel had not presented any newly discovered evidence or special circumstances that would require a reexamination of the Regional Director's representation decision and that all the representation objections raised by the Hotel were or could have been litigated in the underlying representation proceeding. In addition, the Board noted that the Hotel's failure to seek review of the Regional Director's determination barred it from raising the same issue in an unfair labor practice proceeding before the Board. Accordingly, the Board ruled that the Hotel had not

raised any issue that was properly litigable in the unfair labor practice proceeding and ordered the Hotel to bargain with the Union.

## II.

The Hotel concedes that it has refused to bargain. It seeks thereby to obtain judicial review of the Board's. predicate decision to certify the Engineering Department employees as an appropriate bargaining unit. *See Boire v. Greyhound Corp.,* 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964); *St. Margaret Mem'l Hosp. v. NLRB,* 991 F.2d 1146, 1151 n. 5 (3d Cir.1993) ("Because certification orders are not final appealable orders, [the employer] had to expose itself to unfair labor practice charges in order to challenge the validity of the certification in the courts."). Section 9(d) of the Act provides that the facts certified as part of the underlying decision can be examined by the court when it hears an appeal from an unfair labor practice order because "such certification and the record of such investigation shall be included in the transcript of the entire record required to be filed" in the court of appeals. 29 U.S.C. § 159(d) (1983). This court has jurisdiction over the petition pursuant to § 10(e) of the Act and § 10(f) of the Act.[1] It is a separate question whether the Hotel may object to the bargaining unit certification in the course of judicial review of an unfair labor practice proceeding if the Hotel failed to comply with the Board's regulations which require that a party timely seek permission to appeal the Regional Director's unit determination directly to the Board.

Prior to 1961, the Board itself determined and certified for election, after hearing and investigation, the appropriate unit of employees for collective bargaining. *See American Fed'n of Labor v. NLRB,* 308 U.S. 401, 405, 60 S.Ct. 300, 302, 84 L.Ed. 347 (1940); *Amal-*

*gamated Clothing Workers of America v. NLRB,* 365 F.2d 898, 902 (D.C.Cir.1966). There was no provision for direct judicial review of the Board's ˙representation decisions, including the bargaining unit determination, because of congressional concern with the delay and labor strife that such piecemeal appeals would cause. *See Boire,* 376 U.S. at 477–79, 84 S.Ct. at 896–97; *American Fed'n of Labor,* 308 U.S. at 409–411 & 410 n. 2, 60 S.Ct. at 303–304 & 304 n. 2. The Court in *Boire* recognized that the refusal to allow direct review of certification decisions by the courts would delay any challenge to the validity of the certification order, but concluded that the congressional intent was clear. *Boire,* 376 U.S. at 477–78, 84 S.Ct. at 896–97. It was thus established that judicial review of the correctness of a unit certification determination would have to be made in an unfair labor practice proceeding after the employee refused to bargain with the certified representative on the ground that the election was held in an inappropriate bargaining unit. *Id.* at 477, 84 S.Ct. at 896.

The Board developed a huge backlog in large part because of the large number of representation petitions pending before it. *See Amalgamated Clothing Workers,* 365 F.2d at 903 & n. 9. To remedy this, Congress amended the statute to allow the Board to delegate to its Regional Directors the power to determine the appropriate bargaining units, to direct elections, and to certify the results of such elections, subject to review by the Board. *See* Pub.L. 86–257, 73 Stat. 542 (1959) (codified as amended at 29 U.S.C. § 153(b) (1983)); *Amalgamated Clothing Workers,* 365 F.2d at 903 & n. 10. In 1961, the Board promulgated rules delegating the initial decisionmaking on representation issues to the Regional Directors, but retaining the authority in the Board to make the final administrative decision. *See* 26 Fed.Reg.

---

1. Section 10(e) authorizes the Board to petition for enforcement of an unfair labor practice order:

    (e) The Board shall have power to petition any court of appeals of the United States ... wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order.

29 U.S.C. § 160(e) (1983).

Section 10(f) provides for review at the request of an aggrieved person:

    (f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in....

29 U.S.C. § 160(f) (1983).

3889 (May 4, 1961) (codified as amended at 29 C.F.R. § 102.67). Section 102.67(b) of the Board's regulations provides that a party who wishes to challenge any representation decision made by the Regional Director must request review of the Board of such decision within fourteen days.[2]

The regulation sets forth the grounds upon which the Board will grant review, and states it will do so "only where compelling reasons exist therefor." 29 C.F.R. § 102.67(c). It also provides that the parties may waive their right to request review, *see* § 102.67(f), and explicitly sets forth the consequences of failing to take advantage of the opportunity to request review of the Board in a timely fashion, as follows:

> Failure to request review *shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in a representation proceeding.* Denial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding.

29 C.F.R. § 102.67(f) (emphasis added).

Of course, the Board's prescription of the consequences of a party's "failure to request review" is determinative only insofar as the Board's authority reaches. The regulations do not purport to preclude the issues which a reviewing court may consider in cases where a party has failed to seek review from the Board of the Regional Director's certification decision, nor would the Board have the power to do so. However, it is consistent with general principles of administrative law for the court to require a party who challenges the decision of an administrator to exhaust its administrative remedies as long as an opportunity to do so is provided. *See Fed. Power Comm'n v. Colorado Interstate Gas Co.*, 348 U.S. 492, 500, 75 S.Ct. 467, 471, 99

L.Ed. 583 (1955); *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 35–37, 73 S.Ct. 67, 68, 97 L.Ed. 54 (1952).

Once representation issues were delegated in the first instance to the Regional Director, the courts applied the requirement of exhaustion of remedies to unit certification determinations. In a series of cases, the courts held that if a party has failed to request review from the Regional Director's unit determination to the Board pursuant to § 102.67(b), the reviewing court will not consider that underlying issue in an unfair labor practice proceeding. As the court stated in *NLRB v. Int'l Health Care, Inc.*, 898 F.2d 501, 504 (6th Cir.1990), citing, *inter alia*, *NLRB v. Delsea Iron Works, Inc.*, 334 F.2d 67, 71 (3d Cir.1964), it is "well settled law" in numerous circuits that a reviewing court will not hear in an appeal from an unfair labor practice proceeding the employer's argument that "the representative was erroneously certified where the employer failed to timely avail himself of the administrative remedy of seeking review of the certification with the NLRB."

The same result has been reached in numerous other cases by other courts. *See MPC Cash–Way Lumber Co. v. NLRB*, 452 F.2d 1197, 1198 (6th Cir.1971)("[P]etitioner's failure to seek a pre-election review of the Board's unit placement determination precludes judicial review of that determination."); *NLRB v. Rod–Ric Corp.*, 428 F.2d 948, 950 (5th Cir.1970), *cert. denied*, 401 U.S. 937, 91 S.Ct. 922, 28 L.Ed.2d 216 (1971) (same); *NLRB v. Louisiana Indus., Inc.*, 414 F.2d 227, 228 (5th Cir.1969) (per curiam) ("The employer's failure to appeal the ruling of the Regional Director prior to an election was a waiver of this point, and he may not raise the same issue as a defense to an unfair labor practice charge arising from his refusal to bargain with the successful union."), *cert. denied*, 396 U.S. 1039, 90 S.Ct. 686, 24

2. The regulation states in pertinent part:
   The decision of the regional director shall be final: Provided, however, that within 14 days after service thereof any party may file a request for review with the Board in Washington, D.C. The regional director shall schedule and conduct any election directed by the deci-

sion notwithstanding that a request for review has been filed with or granted by the Board. The filing of such a request shall not, unless otherwise ordered by the Board, operate as a stay of the election or any action taken or directed by the regional director....
29 C.F.R. § 102.67(b) (1996).

L.Ed.2d 683 (1970); *NLRB v. Thompson Transport Co.,* 406 F.2d 698, 701–02 (10th Cir.1969) ("Company's failure to exhaust administrative procedures [by appealing to the Board the director's disposition of challenged ballots] precludes review of that issue in this court."); *NLRB v. Rexall Chem. Co.,* 370 F.2d 363, 365 (1st Cir.1967) ("We think judicial review of the [employer's] grounds for refusing to bargain with the Union is precluded by its failure to exhaust an available administrative remedy, [i.e., direct appeal to the Board]."); *see also NLRB v. Hydro Conduit Corp.,* 813 F.2d 1002, 1005–06 (9th Cir. 1987) ("By failing to request [review of the Regional Directors' representation decision], the Union is barred from relitigating any such issue, especially the § 8(a)(5) charges.").

This court adopted that approach in *NLRB v. Delsea Iron Works, Inc.,* 334 F.2d 67 (3d Cir.1964), where we held that in an unfair labor practice proceeding we will not review a unit determination that was not directly appealed to the Board. In *Delsea Iron Works,* the Company fired and replaced thirteen striking workers who later picketed the Company's facility. *See id.* at 68. In response to a union petition for certification, the Regional Director scheduled a pre-election hearing. The union then filed a §§ 8(a)(1) and (3) charge, and sought to withdraw its certification petition, which the Regional Director granted without Company objection. *See id.* The Company then filed an unfair labor practice charge with the Board, alleging that the Union violated § 8(b)(7)(C) of the Act by picketing without having filed a petition for representation within thirty days of such picketing. *See id.* at 69. In response, the Union requested reinstatement of its original representation petition. The Regional Director permitted reinstatement, dismissed the § 8(b)(7)(C) charge, and directed the special expedited election authorized under that section, which the union ultimately won. *See id.* The Company failed to file with the Board a request for permission to appeal the Regional Director's direction to hold the special election under the expedited procedure, as it could have done under § 102.80(c) of the Board's regulations. *See id.*

The Company refused to bargain with the certified union, leading to an unfair labor practice charge and a subsequent petition to this court for enforcement of the Board's order to bargain. Although we agreed with the Company that there was no authority for the Regional Director to treat the withdrawn petition for certification that was later reinstated as if it had been filed within the 30 days so as to trigger the expedited election, *see id.* at 71, we enforced the Board's order against the Company, finding that the Company's failure to seek to appeal the Regional Director's decision to hold an election and its failure to object to the Regional Director's subsequent tally of votes constituted a waiver of its right to object to the election procedure. *See id.*

We explained:

[W]hen the Company received notice that an election would be handled under the expedited procedure, it could have, pursuant to § 102.80(c) of the Board's rules and regulations, sought permission to appeal the Regional Director's direction to hold an election, or to hold an election under the expedited procedure. It did not do so. Instead, it appealed to the General Counsel the dismissal of its § 8(b)(7)(C) charge. The holding of an election, regular or special, in response to the filing of a certification petition, is not a valid ground for objecting to such dismissal. In addition, the Company did not file any objections to the revised tally of votes.

*Id.* (footnotes omitted). We concluded that, "Under these circumstances, the Company must be deemed to have relinquished any right it might have had to object to the Regional Director's directing of a special election and the conducting of the proceeding under the expedited procedure." *Id.*

Both parties direct us to our decision the following year in *NLRB v. Capital Bakers, Inc.,* 351 F.2d 45 (3d Cir.1965), where we considered the unit determination in an unfair labor practice enforcement proceeding notwithstanding the Company's failure to request review by the Board. We excused the Company's "technical" failure to request review, noting that the Company preserved its objection to the Regional Director's unit de-

termination in its Request for Review of the post-election report and argued the same issue before the Trial Examiner at the unfair labor practice hearing, which we concluded had adequately appraised the Board of its intention to rely on this objection in the unfair labor practice proceeding. *See id.* at 48.

There are references to earlier proceedings in *Capital Bakers* that are not fully explicable on the face of the opinion.[3] While there may be distinguishing circumstances, we believe it important to return the circuit law to the rule enunciated in our earlier decision in *Delsea Iron Works,* which is consistent with that applied by the courts of the various circuits. Failure to raise an objection to the Board of a Regional Director's unit determination within the fourteen days required by § 102.67(b) of the Board's regulations constitutes a waiver of that issue in an unfair labor practice proceeding before this court. To the extent that *Capital Bakers* is contradictory to the waiver ruling enunciated in *Delsea Iron Works,* the earlier holding is the precedential one.[4] *See O. Hommel Co. v. Ferro Corp.,* 659 F.2d 340, 354 (3d Cir.1981) ("[A] panel of this court cannot overrule a prior panel precedent.... To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect."), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982); *accord Rehkop v. Berwick Healthcare Corp.,* 95 F.3d 285, 290 (3d Cir.1996); *Gluck v. United States,* 771 F.2d 750, 753 (3d Cir.1985).

The rationale for this rule is apparent. It stems from the courts' historic deference to the Board's administrative procedures. Were we not to enforce strictly the waiver

provision contained in § 102.67(f) of the Board's regulations, we would render the Board's fourteen day appeal regulation in § 102.67(b) purposeless and would undermine the congressional delegation of authority to promulgate administrative rules and procedures to the Board. The Hotel does not suggest that the Board lacked authority to promulgate the regulation that imposes a waiver when an objection has not been preserved, and we see no reason why that salutary procedure should not be followed by the courts as well. *See Marshall Field & Co. v. NLRB,* 318 U.S. 253, 256, 63 S.Ct. 585, 586, 87 L.Ed. 744 (1943) (administrative exhaustion requirements reflect "the salutary policy ... of affording the Board opportunity to consider on the merits questions to be urged upon review of its order."); *NLRB v. Cheney California Lumber Co.,* 327 U.S. 385, 388, 66 S.Ct. 553, 554, 90 L.Ed. 739 (1946); *May Department Stores Co. v. NLRB,* 326 U.S. 376, 386 n. 5, 66 S.Ct. 203, 210 n. 5, 90 L.Ed. 145 (1945); *see also Tucker Truck Lines,* 344 U.S. at 37, 73 S.Ct. at 68 ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.").

## III.

We therefore conclude that the Hotel's objection to the Regional Director's unit determination was waived by the Hotel's failure to seek review of the determination by the

---

3. For example, the opinion states, "Petitioner argues that to have raised the unit representation issue in 1963 in this case would have been futile in the face of adverse determination in two cases within a few months prior to the present case where respondent's request to review unit determinations had been refused by the Board." 351 F.2d at 48. As the Petitioner before us was the Board, it is unlikely that the Board would have made such an argument about the futility of its own exhaustion requirements inasmuch as the Board was seeking enforcement of its unfair labor practice order. More important, it appears, albeit unclearly, that the reference to the earlier "two cases" is to two earlier requests by the

Company to review similar determinations affecting other of its plants. If so, this might explain the court's relaxed waiver approach, but this is merely hypothesis.

4. Section 9.1 of the Court's Internal Operating Procedures states that:

It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so.

Third Circuit I.O.P. 9.1.

Board.[5] Accordingly, we will deny the petition for review and enforce the Board's order.

**5.** Although we decline to pass on the merits of the Hotel's objections, we note that the Hotel's challenge is limited to the claim that the Regional Director's Engineering Department determination was inconsistent with an all-employee unit determination made four years earlier and that this purported inconsistency thereby raises a strong inference that the Regional Director based his decision on the extent of employee organization in violation of 29 U.S.C. § 159(c). However, it is not necessarily inconsistent to recognize that there may be two appropriate bargaining units, especially where, as here, the Regional Director articulated substantial reasons for its determination which were based on legitimate criteria, *see* app. at 224–25, a process that dispels any appearance of arbitrariness or reliance on impermissible factors. *See NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 443–44, 85 S.Ct. 1061, 1063–64, 13 L.Ed.2d 951 (1965); *Mem'l Hosp. of Roxborough v. NLRB*, 545 F.2d 351, 357 (3d Cir.1976).